Good afternoon, Your Honors. I'm pleased to represent Ms. Lebeouf in this case. Your Honor, do we have 15 minutes or 20? Yeah, you've got 15. You reserve 5 for rebuttal, unless you want to do it differently. That's fine. Thank you very much. Just some context facts about the background of this employee. She was a registered nurse, 25-year employee, never previously disciplined, always had positive performance records, did not drink alcohol, did not take illegal drugs. She was suffering from undiagnosed ADD and ADHD at the time. The human resources manager, Mr. Bain Manning, who is the defendant in this case, gave her an ultimatum on October 23, 2011 that said basically that you're going to be suspended for 30 days with pay. You're going to have to take a drug screen, which was no particular problem. But he said you're going to have to be locked up in an inpatient hospital for three days. And that was to occur immediately? That was said right on the spot. In other words, she wasn't going to have time to go get her stuff where she's going to have to go right to the hospital. Absolutely. Does your case really boil down to whether that really was the constructive discharge, giving her that, that that's not really an option and therefore that's why that's constructive discharge? Because it doesn't seem like you're contesting the 30-day suspension or the drug test. It's really just this immediate psychiatric hospitalization that seems to be the nub. That's really coercive. And what we're saying is that the jurisprudence generally of this court says that if you put between the SELA and COBOTUS. COREBTUS. Which I'd rather say the rock and the whirlpool, like the Supreme Court said in the Garrity case. If that's okay with you. Okay. If you put between the rock and the whirlpool of a termination on the spot or a resignation, then that is sufficiently coercive to set forth a due process claim if you're not provided with due process. But you add this threat of three-day inpatient lockdown hospitalization, that enhances the coerciveness of the situation. She was a nurse. I assume that the employer had a rule that anyone, this was in a hospital? Yes. Anybody working in that hospital could be required to take a drug test on the spot. Is that right or not? Probably so. And that's really not an issue in this case. That's not the part that bothers you? No. She consented to the drug test. She didn't take the drug test, though. She didn't take the drug test as a result of her ultimate what we contend to be a forced resignation. Okay. So it seems like that what the district court went off on and was concerned about was whether you had adequately pled that the reason why this choice was presented, if we want to call it that, was because of concern about drug use and not to prevent her from availing herself of her due process pre-termination hearing rights. And so what's your response to that? Well, the concern about drug use is nowhere in the complaint. It's simply a speculative concern that's been raised by the defendant. The district court picked up on that and made it an important part of the decision. There's nothing in the complaint. It's a 12B6 motion we have. And the court made findings or observations based on drug use that really play no part in this at all without any right to discovery. We had not the first right to discovery. What was on Mr. Manning's mind isn't a subject of 12B6. It's a subject for further discovery and development and perhaps a summary judgment, perhaps trial. I would think so, if I can explain. There is a . . . I think there's a conflict in the jurisprudence of this court. We have seven decisions decided by this court. Yes. And they're somewhat in conflict. We start out with the rule in the Buno case versus the City of Donna that says basically if you're between the rock and the hard place or the rock and the whirlpool and you resign without due process, you have a claim. Then the Fowler case and there was another case, the Fendelson case. Then the Fowler case came along in 1986 and said that basically, well, you have to show that the defendant intended for her not to have the benefit of the procedural protections. Subsequent decisions by this court have adopted basically an either-or approach. Either if you're between the rock and the whirlpool or the defendant intends for you not to resort to the procedural protections, that's a sufficient claim. We have some further complication of that in the Rutland case. Your argument that there was this intent to deprive her of an opportunity for a pre-termination hearing? I think the argument . . . That's the reason she was presented with these options? I think the argument is both. I mean, he obviously put her between the rock and the whirlpool in my view. But he also, in the complaint, also alleges that . . . He didn't give her any time to talk to anybody or do anything to find out what her rights were. Right. The whole context was very coercive. The security guards were on the way. She had to leave her car and personally belong at the hospital. He refused to provide any information about her rights. Let me . . . I guess I want to get back to my question, because all I'm asking is . . . Sure. And it sounds simple to me, is at least one of your arguments that his motive for presenting her with these options was to force her to resign, thereby denying her of an opportunity for a pre-termination hearing. That's correct. Is that one of your claims or not? That's all I'm asking. Yes, it is. I'm sorry. All right. I digress too quickly. All right. So even if we have this convoluted set of case law, you think you meet both potential prongs, the rock and the hard place thing and the motive being to deprive? I do. Okay. Manning had no legitimate . . . and the reason I say that is Manning had no legitimate reason to keep her locked down in the hospital after she took her drug screen and she passed the drug screening. No alternative was offered to, okay, well, you can go down to the clinic and take the drug screen, or you can go to your doctor and take the drug screen. You've got to be hospitalized, inpatient for three days, or I'm going to terminate you. And that's in the complaint, clear as a bell. And . . . What do you say here about the fact that you and your client didn't exhaust her administrative remedies? Basically, what I say is that the matter of affirmative defense under the jurisprudence of the Supreme Court and this court, it's not before the court. But even if it was, alternatively, assuming arguendo it was, then our law is quite clear from this circuit that pre-termination rights, procedural rights, and post-termination procedural rights are separate and independent. Charles v. Morgan decided by this court that any failure to exhaust post-termination procedural rights does not affect a pre-termination procedural right case. But as far as the pre-termination procedural right, are you saying that there was a motive to deny her of that opportunity? Is that what you're saying? Yeah. Okay. So let's . . . But then all of her post-termination administrative rights, she didn't file any administrative claims, no grievance. She filed nothing administratively. She did. She did? She did. She filed a civil service appeal. But it was late. It was not timely. And the reason it was not timely, and I briefed this also in my reply brief, is that there was no notice given to her of the right to file a civil service appeal from what's considered to be a forced termination. The civil service appeal, and Your Honor can take judicial notice if you'd like, the civil service appeal has notice of appeal rights for termination, but not for a forced termination. She was given no notice. The problem is those state procedures don't comply with due process, particularly the case of Memphis Light, Gas, and Water v. Craft, Supreme Court. Notice does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting the termination of utility services as unjustified. There was no notice in this case of any right to seek a post-termination remedy, and therefore she didn't receive constitutionally adequate notice. Therefore, there's no claim that she should have filed a post-termination appeal. One of the first cases in this area, the law of Buena v. City of Donna, sets that law forth and relies on the old classic case of Johnson v. Zerbst. And it says in order to waive your rights, you have to, the record has to show actual knowledge of the existence of the right, an understanding of the meeting, and a clear comprehension of the consequences of the waiver. With no notice of any right to file a civil service appeal, the record simply does not substantiate any basis for a finding such as that. But we're kind of outside the record at this point, right? Because your point is that they have to raise this as an affirmative defense and then develop that in the district court if we remand the case. And then you can make these arguments there. That's why I said strong arguendo in the alternative. It's not before the court. But they briefed it, and I felt like I needed to brief it. Sure. I mean, was it? Because I think that what the district court is concerned about is it usually takes a little bit of time to get a drug test back. So let's say you have a nurse that you think is on drugs. She comes in. She agrees to a drug test. Is it your contention that what they needed to do was the drug test and the 30-day suspension or whatever, but not the hospitalization? In other words, that that would have been a reasonable response that you wouldn't have quarreled with so that they have time to get the drug test back, see if she, in fact, was on drugs, so on and so forth, and she wouldn't be an immediate threat to the patients because they pull her off the line. But you just feel that there's no basis at all for this three-day hospitalization, that there's just no basis? I mean, she wasn't mentally ill. The law is clear. I'm sorry, sir. No, I was just going to say, and I'm not suggesting she was mentally ill, but you now say she had what was then an undiagnosed attention deficit disorder. Right. Is that right? And then there was another. ADD, attention deficit, ADHD, attention deficit hyperactivity disorder. And so you'd agree that would suggest that Manning was not without some basis for at least thinking that something was amiss. Whether or not you agree that it was sufficient that he should have ordered some psychiatric evaluation, what you're now telling me is subsequent to that, she apparently had some examination from somebody where these diagnoses were made. You know, there may have been some basis for it, but that's a matter of defense, and certainly the 30-day suspension with pay and the drug screen would have satisfied any legitimate concerns. I mean, do people get involuntarily hospitalized for attention deficit disorder? No. I mean, it's very difficult to involuntarily hospitalize somebody, even somebody who's ranting and raving and screaming, much less someone who has a very, very common situation of attention deficit disorder, which is a very common diagnosis that people live their lives and function quite fine with. A lot of children have that. Exactly. I know. I mean, the law is real clear that involuntary confinement is, the Supreme Court says, a massive curtailment of liberty, and you can't do that unless there's clear and convincing evidence of danger to yourself or others who are gravely disabled or something to that effect. I would like to add . . . I didn't mean to interrupt you. No, go ahead. I'd like to add that the district court apparently held that because this third option was given to Mrs. LaBeouf and that the either-or choice of resignation or termination was not coercive, I completely disagree. I mean, I think adding the involuntary hospitalization makes it more coercive rather than less. I mean, that's the coerciveness of a lockdown. And I cited the Frost v. Railroad Commissioner case in my brief. It says the state may not impose conditions that require the relinquishment of constitutional right. Manning was saying basically you give up your liberty interest to determine your own medical care and your own freedom in order to preserve your property interest and continued employment, and that just doesn't meet constitutional muster in my respectful opinion. I also cited the Garrity case. That was the case where the police officers were being interrogated and they were told anything you say might be used against you. You have the privilege to refuse to answer questions that you think might incriminate you, but if you do answer, you'll be subject to termination. The same sort of coercive activity is here, and the Supreme Court said whether the choice is between rock and the whirlpool, duress is inherent in deciding to waive one or the other. We contend that in addition to the rock and the hard place provided by the threat of involuntary lockdown, it basically more than satisfies the coerciveness element in this cause of action. Okay, Counselor, you've saved some time for rebuttal. Thank you. Thank you very much. All right. Mr. Guest? Good afternoon, Your Honors. Lance Guest on behalf of Bain Manning in this manner. Plaintiff's constructive discharge complaint fails the state of constitutional violation for two main reasons, and that is precedents from this honorable court indicate that an employee can't ignore the process duly extended to them and later complain that he was not accorded due process. This precedent places an exhaustion of administrative remedies requirement before an employee can bring a constitutional due process claim for an alleged constructive discharge. But isn't that an affirmative defense that you all need to plead on remand if we remand this? Not in the face of defendant's qualified immunity assertion. With the qualified immunity assertion by defendant, plaintiff is required and has the burden to assert necessary facts that establish that she can overcome defendant's qualified immunity. So at this point . . . I mean, we have cases against prison. All those people have qualified immunity, and we say exhaustion of affirmative remedies is . . . administrative remedies is an affirmative defense. I mean, I don't think the fact of qualified immunity changes that. But if it's a requirement to state a constitutional violation that you exhaust administrative remedies, then they need to plead that in their claims. We have a lot of case law on that in the prison context that's to the opposite. Is there something about this that's different? This is not a prison . . . Well, I understand that, but . . . It's a procedural due process constitutional claim against an employer. Well, do you have a case that treats this particular affirmative defense as part of what you need to plead and satisfy for the qualified immunity defense? I don't have a particular case offhand. Again, I would just assert that all the qualified immunity cases that require . . . that place the burden on plaintiff to assert . . . to assert facts that establish that they can overcome the qualified immunity or assert the constitutional violation . . . those cases that I would refer the court to. I can't remember them off the top of my head, but I can gladly supplement that for you after the hearing. Okay. You said you had two reasons. What was the other one? The other reason is that the only reasonable inferences from the facts as alleged by plaintiff are that defendant sought to conduct an investigation into possible drug use, a plaintiff, which threatened the safety of the hospital and not a desire to avoid pre-disciplinary hearings. Yeah, but the problem with that is she was willing to do the drug test and the 30-day suspension, and that would have been enough. That would have gotten her out of the hospital where she could not be a danger to patients. It would have answered the question of whether she was on drugs. What was the need for the three-day psychiatric hospitalization? It's defendant's assertion that plaintiff has put an unreasonable inference or burden on herself that she was actually required to do that. Plaintiff had numerous options that day, and one of which was not to participate in the investigation at various levels. She doesn't have to fully participate. She could say, hey, I'll do the drug test, but I'm not going to go to the hospital. Do with me what you will, but I'm not going to go. At that point, there had been no discipline. At that point, according to the allegations of plaintiff, she had been placed on 30-days paid suspension, and only after she inquired about her other options were termination or resignation ever mentioned. When she asked what other options do I have other than doing the drug test or going to the hospital, Mr. Manning said, well, termination or resignation. Okay, so the point is you're saying she should have agreed to the drug test and then said, I'm not going to the hospital. That's essentially what she said. She said, what happens if I do that? What happens if I refuse to go to the hospital? And she was told, well, you'll have to resign or be terminated. So those are her choices, a 3-day stay in the psychiatric hospital, resign or be terminated. That's it. She wasn't given some fourth option, at least according to her. I mean, we're only at the complaint stage. I know there's probably other facts and so on. That's fine. It's an unreasonable inference from plaintiff to feel that those were her other options. She's a 23-year civil service employee who knew that she could not be disciplined without written authority. So if Mr. Manning says these are your options, she should know as a civil service employee with 23 years' experience that he can't do anything to her until it's in writing. He can't do anything with her proper authority until it's in writing. So she could have stood her ground that day and said, I'm not doing anything. What are you going to do about it? That does not sound like 12 v. 6. This sounds like a jury argument. I mean, it's really amazing to me that we're going to sit around and judge somebody's intent and motive and all of this in this very flaky situation as a matter of law. We should infer that she should have known all this when that's nowhere in the complaint. As a reasonable employee, civil service employee, she should have known this. Well, who's to say she was reasonable? Where does that come from? This is the standard that she needs to meet in order to state a constitutional violation. It's not her subjective belief that I feel like I've sustained a constitutional violation because I felt so coerced. I only had these two options today. No, a reasonable employee would have known you had more options that day. Okay, then why didn't Mr. Manning say that? He's a reasonable employee too. Why didn't he say, well, your other option is to go have a pre-termination hearing? That's not his duty. He doesn't have a duty to educate her. He doesn't have a duty to tell her all her options that day. He's going to tell her, oh, you don't have to do the investigation. You cannot fully cooperate. Why would he tell her that? He's trying to get her to cooperate, trying to get this investigation, trying to get that information. So he's going to present the options that suit his cause at that time, not the options that are going to best suit her. Okay, so how can anybody ever be constructively discharged then? If they're presumed to know all their different options, how can they ever be deprived of these remedies? I would assume sexual harassment, you have sex with me or I'm going to fire you. Okay, well, she should know that she doesn't have to have sex with him. Exactly. Okay, so then you can't be constructively discharged for that. Under your theory, you should know that people can't make you do unreasonable things, and therefore you're never going to be constructively discharged. The average citizen knows that a human resources officer can't detain them or can't enclose them in a mental hospital. The average citizen knows that. Okay, but did Mr. Manning have the authority to fire her? I'm assuming not without written authorization, no. He has to put it in writing. He had the authority to do it, but he has to put it in writing. He can't verbally fire her on the spot. If he did, then she has the appeal process, which she would win because it has to be in writing. She had an appeal process available. But she hasn't alleged that she acted that way. If she truly was coerced into the resignation or constructively discharged, why didn't she immediately go to some superior or the Civil Service Commission? She didn't. The only inference from that is it's a voluntary—the only reasonable inference from that is it's a voluntary resignation. She has 23 years of Civil Service experience, and those are Louisiana laws. She's presumed to know that, and she can't make unreasonable— Well, you just wiped out a lot of case law and notice because everybody's presumed to know the law, but there's a lot of stuff where you're still entitled to notice of your rights and this and that and the other. The law that he mentioned about notice doesn't apply to resignations. If you resign, the Civil Service doesn't have a duty to notify you, hey, you have appeals for your resignation. You resign. So his requirements for his sites to notice don't apply. There is no notice. There is no requirement to notify she had an appeal right. You resign. So does she have a right to a post-termination hearing if she resigns? Yes. She can. She can go to the hearing and say, hey, this resignation was coerced. She doesn't have a right to know that. Well, she—I don't—the state doesn't have to send her a letter and say, because you resigned, here, you have an appeal process on her. The assumption is that she resigned voluntarily, and no one in the state's going to, in their mind, think that she was coerced in this resignation. She has to bring that to them. Those requirements for notification only happen when there's been discipline, not when there's been a resignation. So his reference that she needed to have notice after she resigned, there's no application for the fact. What about if she was constructively discharged? Is she entitled to notice then? No, that's what I'm trying to say. She has to claim that there's been a constructive discharge. My resignation was really a coercion, and she has to go and claim that. How is anybody else in the civil service process to notice unless she comes and brings it forward? Otherwise, everybody that ever resigned, the state's going to have to send them a notice letter saying, hey, you have an appeal if this was possibly a coerced resignation. It's not the standard burden that's out there. The point I'm trying to get at is plaintiff has unreasonable inferences, and when she says she had limited choices, that's not how it existed that day. She knew she didn't have to fully cooperate. She had other choices rather than the three she stated. She could cooperate a little bit and then say, hey, I've had enough. Do with me what you will. Go out and establish this in a deposition, and then you can file for summary judgment. This just seems like a funny thing for us to be deciding on 12b-6, which is as matter-of-law-ish as you're going to get. Again, I cite that she needs to state that facts, illicit facts, that Mr. Manning had motive to prevent. Well, she says that she wasn't given a chance to talk to anybody. She wasn't given any time. Those are things that sound coercive, that sound like I'm trying to keep you from finding out what rights you might have. She doesn't have the constitutional right to talk to someone. She's an adult. Okay, but you're saying she hasn't pled any facts. I'm telling you the facts she's pled, from which we could draw the inference that this man is trying to either force her into the hospitalization or force her out the door without a chance to reflect, to talk to people, to do all those things. That's what makes it coercive. If I give you time to think, it's less coercive than if I say, you better tell me right now. That's more coercive. That's all I'm saying. The question says she pled some facts to support the conclusion, and I'm saying those are the facts she's pled. Defendant is asserting that a reasonable employee would not feel coerced in that situation as the facts have been alleged. They had other options. Just because she didn't allege she had other options today, a reasonable employee would know they had other options today, that day. I understand what you're arguing. Do you have other? So I would like to return to the idea of the exhaustion requirement, and that exhaustion requirement flows from the principle of the Peratt Doctrine, where the Supreme Court has set down that certain tortious acts should not be vindicated in federal courts. According to the Supreme Court, it's set up a class of tortious acts that are not enforceable under 1983, Title 42 of the U.S. Code, specifically foreclosing alleged due process violations for which state has an adequate post-depravation remedy. Now, since she resigned, she couldn't have a pre-depravation. Her resignation prevented a pre-depravation violation. So she only had available the post-depravation. And if that resignation was truly coerced, then she should have immediately gone to that post-depravation hearing, the appeal. But she didn't. As plaintiff counsel said today, she waited too long and lost that. So that leaves a reasonable evidence that her resignation was voluntary. This honorable court has recognized that civil servants in this circuit have adequate post-depravation remedies in state law and procedure and forecloses an employee's alleged constitutional due process violation when that employee failed to engage in available civil service procedural process. And to quote a case from the circuit, otherwise Rothschild's or plaintiff's theory would encourage employees to resign, accept demotions, or accept revocations to file federal lawsuits later to pursue rather than to pursue available administrative remedies. Ms. Labuse's suit presents the same theory and should be dismissed accordingly. Under her theory, any civil service employee who desires to thwart a drug test or any investigation by the employee would merely resign at the threat of investigation, then later file a federal lawsuit seeking reinstatement and damages. Investigation avoided and job reinstated. This court should not allow employees to manipulate and abuse the state and federal legal systems to avoid employee investigations. Ms. Labuse attempts to do just that. It should be dismissed because she failed to exhaust available administrative remedies and she fails to state a constitutional violation. Because reasonable state employees would know she had other options that day and not suffer the constitutional violations. They know that they wouldn't have to go to a psychiatric hospital. They know they couldn't be detained by a human resources employee anywhere.  It's just not reasonable for a civil service employee to feel the alleged coercion that they claim she held. It's just not reasonable. It shouldn't serve as a basis of a constitutional violation. Thank you. I'm sorry for the sound system. I'm sorry as well. Well, we appreciate your patience with us. Yeah, I certainly respect Ms. Labuse. Go ahead and let her reset the clock. Okay. Go ahead. I certainly respect Mr. Guess's argument. I just believe that what is reasonable, what is not reasonable, what she did and what she should have done are matters for defense. Exhaustion is a matter for affirmative defense. He's raised this question about whether in the qualified immunity context there's a different rule. Do you have cases or do you know . . . Do you have a case that addresses the problem of how you deal with an affirmative defense in the qualified immunity context? No. I've always thought, based on the jurisprudence of this Court, there are two inquiries. One is, is the law clearly established? And number two, is the actor . . . is it objectively reasonable under the circumstances? And that affirmative defense is clear that that is a . . . I mean, exhaustion is clear that it's affirmative defense. I mean, you have to look at all that law sort of in paramateria, but there is nothing that indicates that we have the burden of disproving an affirmative defense. That we have the burden of disproving the fact that they assert that she was unreasonable under the circumstances. There's just no law to support his position. Well, you can certainly preach it. With a qualified immunity defense, you could certainly confect an argument that would put the burden on your client. But I'm not . . . my question is, has anybody done that? No, I've not seen it. I've not seen it. I think I would be familiar with it. I can't promise, but I think I would be. So, you're not arguing that she didn't know about the Louisiana Civil Service Commission and the rights she had under the commission? Your argument is just that she didn't have to pursue an administrative remedy? Well, my argument is twofold. Number one, the pre-termination and post-termination things are different animals, according to the U.S. Supreme Court jurisprudence and the jurisprudence of this court. Secondly, in order to be a sufficient state remedy, the state remedy has to comply with constitutional safeguards. That the mere fact of a state remedy doesn't make it sufficient. Gilbert v. Homer, the Supreme Court said very clearly that you have a . . . Which state remedy are you arguing was . . . They're talking about a civil service appeal post-termination. That's what they're saying she should have exhausted. Gilbert v. Homer says that you're entitled to a comprehensive post-termination hearing. So, you're saying that would have been an inadequate remedy? It is inadequate because she didn't have any notice of it, any notice of the availability of it. Because the Memphis gas and light case that I've cited say you have to be notified of the availability. Your only complaint about this remedy that the state has provided for years and years through the Civil Service Commission is just that she didn't know about it. Not that there's nothing wrong with the process that they have set up to afford due process post-termination. Your only complaint is she didn't know about it. She has to be advised of it. And she didn't know about any time limitations for filing it. There was a very short time limitation. She didn't comply with that because she didn't know about the time limitation. Normally, in a termination case, the employees are advised that you have the right to a civil service appeal, and you have to do so within 30 days. In this case, she filed a civil service appeal. Well, one of the keys is you just said in a termination case, she resigned. Didn't she? It was a forced resignation. I know that's your claim. You know, she resigned. But the fact is, she left. She left because she didn't want to go to be hospitalized in a men's hospital. And that's in the complaint, and that's just as coercive as it can be. I mean, she was— Well, and fundamentally, all this stuff about exhaustion you think should take place before the district court first because it's something that they need to plead as an affirmative defense that you need to have a process about that hasn't happened. I absolutely do not believe it's before the court. The complaint in closing alleges that the resignation was coercive for a number of reasons, including the fact that Banning refused her request for information about civil service rights. He demanded immediate answer. He did not give her any time to choose. He refused to provide her any reasons for his proposed action against her, and he misrepresented to LaBeouf that she could be involuntarily committed to a psychiatric hospital. Now, that's the information she had before her when she made her decision, and that's coercive, and she's entitled to due process. Okay. Thank you very much. I think we have both sides' arguments. Thank you both. We're going to take a short recess to reconstitute the panel. We'll be back in about 10 minutes. Thank you.